UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                               :

DONALD WHITE,

                               :    REPORT AND RECOMMENDATION

             Plaintiff,

                               :    11 Civ. 5285 (GBD) (MHD)

   -against-

                               :

COMMISSIONER DORA B. SCHRIRO;
CITY OF NEW YORK,                 :

                               :

            Defendants.

                               :
----------------------------------X

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

    Pro se plaintiff Donald White, an inmate of the New York City
Department of Correction ("DOC"), commenced this lawsuit on July
21, 2011, challenging various conditions of his confinement in the
Central Punitive Segregation Unit ("CPSU") of the Otis Bantum
Correctional Center ("OBCC"). (Compl. 2). In addition to a general
complaint of unsanitary conditions, plaintiff asserts that in the
CPSU: (1) birds are in the housing area spreading feces; (2)
showers are cleaned only once per month; (3) there is no
extermination for rodents; (4) there is dust in the vents; and (5)

he lacks hot water. (Compl. 3a).[1] The Court construes plaintiff's complaint to be seeking damages and injunctive relief.

Defendants move to dismiss, pursuant to 28 U.S.C. § 1915(e)(2), on the ground that plaintiff made false statements in his request to proceed in forma pauperis ("IFP Application"), and therefore his complaint should be dismissed with prejudice in its entirety. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") 1). In the alternative, defendants contend that plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) allegations that he exhausted some steps in the grievance procedure make it clear that he has not fully exhausted his administrative remedies; (2) he fails to allege the personal involvement of defendant Dora B. Schriro, Commissioner of the DOC; and (3) he fails to allege that the allegedly unconstitutional conditions are the result of a custom or policy of the City of New York. (Id.). Plaintiff did not oppose the motion.[2]

---

[1] Plaintiff's complaint includes a page handwritten on lined paper between pages three and four of the § 1983 form complaint. We will refer to that page as 3a.

[2] "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000).

For the reasons that follow, we recommend that defendants'
motion be granted in part and denied in part.

BACKGROUND

Donald White's claims first arose on April 5, 2011. (Compl.
2). White alleges that the CPSU at OBCC is unsanitary. (Id. at 3a).
Birds fly around in the housing area, leaving feces on the hand
rails. (Id.). Showers in the CPSU are cleaned only once per month,
there has been no extermination for rodents, and there is dust in
the vents. (Id.). Finally, White alleges that he does not have hot
water. (Id.).

In the complaint, White included the following allegations
about his use of facility grievance procedures:

> Q:  [N]ame the [facility] where you were
>     confined at the time of the events giving
>     rise to your claim(s).
> A:  Otis Bantum Corr Fac
> Q:  Does the [facility] where your claim(s)
>     arose have a grievance procedure?
> A:  Yes
> Q:  Does the grievance procedure at the
>     [facility] where your claim(s) arose
>     cover some or all of your claim(s)?
> A.  Do not know

3

>     Q:   Does the grievance procedure at the
>          [facility] where your claim(s) arose <u>not</u>
>          cover some of your claim(s)?
>     A:   Do not know
>     Q:   Did you file a grievance in the
>          [facility] where your claim(s) arose?
>     A:   No
>     Q:   If NO, did you file a grievance about the
>          events described in this complaint at any
>          other [facility]?
>     A:   Yes
>     Q:   If you did file a grievance, about the
>          events described in this complaint, where
>          did you file the grievance?
>     A:   I file[d] a grievance at O.B.C.C. corr.
>          fac . . .
>     Q:   What was the result, if any?
>     A:   None
>     Q:   What steps, if any, did you take to
>          appeal that decision?   Describe all
>          efforts to appeal to the highest level of
>          the grievance process.
>     A:   I wrote a grievance and to the Deputy
>          Warden [sic].

(Compl. 4).

Plaintiff annexes a "Grievant's Statement Form" that he signed and dated June 26, 2011. (<u>See</u> <u>id.</u> Ex. A). In that form, he grieved "the sanitation that['] s in this housing area," including the fact that "the pantry [doesn't] get cleaned," "the shower smell[s] like [a] sewer[]," and "[there] are nats[3] all over in the[re]." (<u>Id.</u>).

---

[3] It is unclear whether plaintiff grieved that there are "rats" in the facility or whether he misspelled the word gnats as "nats." (Compl. Ex. A).

He also grieves that there are "birds flying everywhere using the bathroom everywhere and etc." (Id.). Plaintiff states that he is "scared to eat" because birds fly overhead when food is being served and they use the bathroom "everywhere," and that the facility requires "serious cleaning" because of the "bird feces" on the rails. (Id.). In his prayer for relief, plaintiff seeks to "press charges" and asks the Court to "follow up" and "help [him] file a lawsuit." (Compl. 5).

With his complaint, plaintiff filed a request to proceed in forma pauperis ("IFP") and a Prisoner Authorization, both dated July 11, 2011. On September 28, 2011, Chief Judge Preska granted plaintiff's IFP Application. (See Order Granting IFP Application, Sept. 28, 2011). The Court sent a letter requesting deductions from his prison account toward the $350 filing fee to OBCC on October 31, 2011.

<u>ANALYSIS</u>

I.   <u>Rule 12(b)(6) Criteria</u>

On a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claim[s]." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 576 (2d Cir. 2006) (internal citation omitted). In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. See, e.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).

The pleader may not rely, however, on allegations that are only bare legal conclusions, see Starr v. Sony BMG Music Entm't, 592 F.3d 314, 317 n.1 (2d Cir. 2010), or "legal conclusions couched as factual allegations," id. at 321 (quoting Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007)). A complaint is subject to dismissal unless its well-pled factual allegations, if credited, make the claim "plausible." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949-50 (2009). In order to survive a motion to dismiss, plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Starr, 592 F.3d at 321 (quoting Iqbal, 129 S. Ct. at 1949).

When addressing a Rule 12(b)(6) motion, the court may not consider evidence proffered by the moving party or its opponent.

6

See Roth v. Jennings, 489 F.3d 499, 509 (2007). Rather, the court is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

In view of plaintiff's status as an untutored pro se litigant, we read his complaint and motion papers liberally and derive from them the strongest arguments that they suggest. See Triestman, 470 F.3d at 474-75. Moreover, "[t]hese liberal pleading rules apply "with particular stringency to [pro se] complaints of civil rights violations." Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003). The "plausibility" standard articulated in Iqbal nevertheless applies to the pleadings of a pro se party. See Carvel v. Cuomo, 357 F. App'x 382, 383-84 (2d Cir. 2009).

II.   <u>Defendants' Motion to Dismiss</u>

A.   <u>Application to Proceed In Forma Pauperis</u>

Defendants contend that plaintiff misled the court in his IFP Application and argue that the entire complaint should be dismissed with prejudice as a consequence. (Defs.' Mem. 6). They point to two purportedly misleading statements in his IFP Application: (1) plaintiff answered "Not Employed" to a question about whether he had received any income from any source in the past twelve months, and (2) he wrote "N/A," or "not applicable," in response to a question about whether he has "any money, including any money in a checking or savings account," and "if so, how much." (<u>See</u> Defs.' Mem. 3 (quoting IFP Request 1)).

Defendants submit plaintiff's Inmate Transaction List, (<u>see</u> Decl. of Emily Sweet ("Sweet Decl.") Ex. B, at Ex. A),[4] though they do not ask the Court to take judicial notice of it or assert any other basis for asking the Court to consider evidence outside of the pleadings on their motion to dismiss. Defendants argue that

--------

[4] Plaintiff's Inmate Transaction List reflects that the balance in his prison trust account was $28.03 at the close of the date on which he signed the IFP Application. (<u>See</u> Sweet Decl. Ex. B, at Ex. A, at 26).

8

plaintiff attempted to mislead the Court by concealing the fact that he received deposits totaling $922.00 in the seven months before he signed the IFP Application, including $80.00 in the two months preceding the application. (See Defs.' Mem. 4).

The IFP statute, 28 U.S.C. § 1915(e)(2)(A), provides that the court "shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." The purpose of this provision is to "weed out the litigants who falsely understate their net worth in order to obtain in forma pauperis status when they are not entitled to that status based on their true net worth." Cuoco v. U.S. Bureau of Prisons, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) (quoting Hobbs v. County of Westchester, 2002 WL 868269, at *2 (S.D.N.Y. May 3, 2002)). Thus, the issue is not necessarily the accuracy of any given statement in the request but rather whether plaintiff misrepresented his financial arrangements in bad faith and whether the allegation of poverty is untrue. See, e.g., Vann v. Horn, 2011 WL 3501880, at *1 (S.D.N.Y. Aug. 9, 2011) (stating that "[a] misrepresentation by a plaintiff as to his or her financial assets is not necessarily fatal to the plaintiff's claims" absent a showing of bad faith); Chandra M.D. v. Beth Israel, 2010 WL 5600373, at *7 (S.D.N.Y. Dec. 2, 2010). "Bad faith includes 'conceal[ing] a source of income in order to gain access

to a court without prepayment of fees.'" <u>Vann</u>, 2011 WL 3501880, at
*1 (alteration in original) (quoting <u>Cuoco</u>, 328 F. Supp.2d at 468).

Two features of the IFP system as it applies to prisoners are
relevant in considering whether plaintiff acted in bad faith: (1)
prisoners are responsible for the full filing fee even if they are
granted IFP status, and (2) prisoners must authorize the facility
to disclose their prison account statements to the court.

In order to deter frivolous prisoner lawsuits, Congress
adopted the Prison Litigation Reform Act ("PLRA"), which provides
that prisoners proceeding IFP "shall be required to pay the full
amount of a filing fee." 28 U.S.C. § 1915(b)(1). A prisoner who is
granted IFP status makes an initial payment toward the filing fee
of 20% of the greater of: (1) the average monthly deposits to the
prisoner's account, or (2) the average monthly balance for the six-
month period prior to filing the complaint.[5] <u>Id.</u> After the initial
payment, a prisoner continues monthly payments of 20% of the prior

---

[5] The prisoner must authorize the facility where he is
incarcerated to send the court certified copies of his prison
account statements for the six months prior to filing. 28 U.S.C.
§ 1915(a)(2).

month's income credited to his prison account until the entire
filing fee has been paid.[6] 28 U.S.C. § 1915(b)(2).

The incentive for a prisoner to mislead the court to obtain
IFP status is thus less than for other litigants because a prisoner
with funds in his prison account will still pay the full amount of
the filing fee even if he is granted IFP status. Moreover, the
opportunity to misrepresent the amount of income in a prisoner
account is greatly diminished by the fact that the court receives
prison account statements from the facility detailing all income in
the account. See, e.g., Morales v. City of N.Y., 2011 WL 4448951,
at *1 (S.D.N.Y. Sept. 23, 2011) (finding that it was not bad faith
for pro se plaintiffs to answer "No" or "N/A" in response to IFP
application's question asking if they had any money, including in
a checking or savings account, and commenting that any funds
contained in such accounts up to six months prior to filing were
automatically disclosed to the IFP-approving judge through the
Prisoner Authorization Form).

With this context in mind, the court considers whether
plaintiff's statement that he is "Not Employed," in response to a

---

[6] No payments are made where the prison account contains $10
or less. 28 U.S.C. § 1915(b)(2).

question about whether he received any income from any source in the past twelve months, was made in bad faith. In <u>Cuoco</u>, 328 F.3d at 467-68, the court found it "inconceivable that [plaintiff] innocently overlooked her obligation" to report a $13,500.00 settlement that she had accepted three weeks before seeking IFP status and had diverted to an account outside the prison. In contrast, plaintiff in this action authorized disclosure to the Court of his prison account statement reflecting the amounts he received in the past six months, and he had a balance of only $28.03 on the date he signed the IFP Application. The Court need not infer bad faith from plaintiff's ambiguous response absent some further reason for doing so, nor is there any basis for concluding that plaintiff "was not impoverished," <u>Cuoco</u>, 328 F. Supp. 2d at 467, at the time that he applied for IFP status. Particularly in view of the fact that plaintiff is an untutored <u>pro se</u> litigant, his ambiguous statement should not be construed as intentionally misleading absent some specific reason for doing so.

Defendants' second assertion -- that plaintiff misled the court by indicating that the question about whether he had "any money, including any money in a checking or savings account" was "N/A" or "not applicable" -- is even less compelling. As other judges in this Circuit have pointed out, a prisoner could

12

reasonably understand a question about checking or savings accounts not to include prison trust accounts. See Morales, 2011 WL 4448951, at *1 (asking whether a prisoner has "'any money in a checking or savings account' . . . does not directly address how much money is in a prison trust fund account"). Because prisoners authorize release of their prison account statements in any case in which they seek IFP status, it is particularly reasonable for them to understand this question to be limited to other accounts, for which the court does not already have information. See, e.g., id. Accepting defendants' argument would expand the use of § 1915(e)(2)(A) so that any ambiguous statement in a prisoner's IFP application would warrant dismissal of the entire action with prejudice, even if the allegation of poverty was true. Accordingly, we recommend that the motion to dismiss plaintiff's complaint based on allegedly misleading statements in his IFP Application be denied.[7]

---

[7] Defendants ask us to consider a letter that plaintiff submitted to the Court on August 25, 2011 in Donald White v. Officer Oliver, No. 11cv3725 (S.D.N.Y. filed May 18, 2011), a similar action brought by Mr. White. Plaintiff submitted that letter in response to a letter from defendants -- which is not provided -- regarding plaintiff's purportedly "misleading statements" in his IFP application in that case (which defendants describe as "identical" to the IFP Application in the present case). (Defs.' Mem. 3, 7). Defendants assert that on August 16, 2011 Corporation Counsel in White v. Olivar "brought it to the Court's attention that, in fact, Plaintiff had received over $800 in deposits in his inmate account between the date of his

B.   PLRA Exhaustion Standards and Procedures


The PLRA prohibits a prisoner from bringing a prison-conditions claim under § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendants ask the court to take judicial notice that the New York City Department of Corrections ("DOC") has a five-step administrative review and appeals system for prisoner grievances.[8] (Defs.' Mem. 10

---

incarceration in January 2011 and May 16, 2011." (Defs.' Mem. 4).
In response, plaintiff submitted the August 25, 2011 letter,
asking that we not revoke his IFP status or dismiss his complaint
pursuant to 28 U.S.C. § 1915(e)(2)(A) because he was "truthful"
in his IFP Application, and because he felt that he "deserve[d]
the privilege provided for the benefit of indigent because [he
is] not employed." (See Sweet Decl. Ex. A). Defendants
characterize this letter as "neither denying nor acknowledging
that [plaintiff] had received the funds identified" in the August
16, 2011 letter, "despite being given an opportunity . . . to
explain his misleading statements . . . ." (Defs.' Mem. 1, 4).
Defendant insinuates that plaintiff's failure to explicitly deny
possession of approximately $800.00 in deposits to his inmate
account suggests his untruthfulness with regards to the IFP
Application. For reasons already discussed, we decline to
consider plaintiff's letter in the light that defendants suggest.

[8] The DOC's five-step process for handling prisoner
grievances requires that, in order to completely exhaust an
adverse determination, a prisoner must: (1) file a complaint with
the Inmate Grievance Resolution Committee ("IGRC") for informal
resolution; (2) if the grievance is not resolved informally
within five days, request a formal hearing with the IGRC, which
must issue a recommendation within two working days; (3) appeal
the IGRC's recommendation to the Warden of the facility, who must
issue a decision within five working days; (4) appeal to the DOC
Central Office Review Committee ("CORC"), whose response time
varies depending on the grievance; and (5) appeal the CORC's
decision to the Board of Correction, which has twenty days to

n.1). Defendants assert that plaintiff's complaint should be dismissed for failure to exhaust administrative remedies because it is clear from the allegations in the complaint that he has not completed all five steps of DOC's grievance procedure. (Defs.' Mem. 11).

Plaintiff used the Court's form complaint, which asks "What steps, if any, did you take to appeal that decision [on the initial grievance]? Describe all efforts to appeal to the highest level of the grievance process." (Compl. 4, ¶ F(3)). Plaintiff alleged in response, "I wrote a grievance and to [sic] the Deputy Warden." (Id.).[9]

The Supreme Court has made clear that prisoners "are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). Even though "screening would be more effective if exhaustion had to be shown in the complaint," the Supreme Court has cautioned that courts should

issue a recommendation to the Commissioner. (Defs.' Mem. 10); The City of New York Department of Correction, Directive No. 3375R-A, Inmate Grievance Resolution Program, March 13, 2008, http://home2.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf.

[9] Plaintiff annexes to the complaint a "Grievant's Statement Form" dated June 26, 2011, (see Compl. Ex. A), but does not annex any written communication that he may have had with the deputy warden.

not impose a requirement that does not exist in the statute "on the basis of perceived policy concerns." Id. at 212 (citing Leatherman v. Tarrant Cnty. Narcotics, Intelligence & Coordination Unit, 507 U.S. 163 (1993) (rejecting heightened pleading requirement in § 1983 suits against municipalities); Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (reversing Court of Appeals for requiring employment discrimination plaintiffs to specifically allege prima facie case of discrimination)).

Because prisoners are not required to plead compliance with prison grievance procedures in their complaints, this court has noted in similar cases that "a pro se plaintiff's pleading references to various efforts that he had made to bring alleged prison violations to the attention of the prison authorities cannot be treated as tantamount to an admission that he had not exhausted his administrative remedies." Wesley v. Muhammad, 2008 WL 123812, at *3 (S.D.N.Y. Jan. 10, 2008); see also Randolph v. City of N.Y. Dep't of Corr., 2007 WL 2660282, at *7 (S.D.N.Y. Sept. 7, 2007) (declining to dismiss complaint for failure to exhaust where "at no point does [plaintiff] state that he failed to follow all the required grievance procedures").[10] Accepting defendants' argument --

---

[10] See also James v. Orange Cnty. Corr. Fac., 2011 WL 5834855, at *3 (S.D.N.Y. Nov. 18, 2011) (declining to dismiss for

16

that it is "clear" that plaintiff has <u>not</u> exhausted unless he pleads that he has -- would impose the very pleading burden that the Supreme Court rejected in <u>Jones</u>.

Moreover, plaintiff's allegations also do not rule out the possibility that one of several exceptions to the exhaustion requirement applies. The Second Circuit has recognized three exceptions to the PLRA's exhaustion requirements. <u>See</u> <u>Hemphill v. New York</u>, 380 F.3d 680, 686 (2d Cir. 2004).[11] Although the Supreme Court held in <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006), that prisoners must exhaust administrative remedies by "using all steps that the agency holds out, and doing so <u>properly</u>," courts within this Circuit have concluded that at least some of the exceptions

_____

failure to exhaust where plaintiff "supplied at least a partial history of his exhaustion of the grievance process"); <u>Johnson v. Westchester Cnty. Dep't of Corr. Medical Dep't</u>, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (declining to dismiss where plaintiff alleged that he had "filed a complaint within the office of the Warden" and that he "ha[d] followed all Rules and [Procedures]").

[11] A prisoner may proceed with a prison-conditions claim, even where he has not exhausted administrative remedies, if "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." <u>Ruggiero v. Cnty. of Orange</u>, 467 F.3d 170, 175 (2d Cir. 2006) (citing <u>Hemphill</u>, 380 F.3d at 686 (2d Cir. 2004)).

recognized in Hemphill survive Woodford. See, e.g., Vogelfang v.
Riverhead Cnty. Jail Officers, 2009 WL 230132, at *2 (2d Cir. Feb.
2, 2009) (remanding summary-judgment award where district court
failed to consider whether the failure to exhaust administrative
remedies "should be excused under the Hemphill line of cases");
Blanche v. Pirelli, 2009 WL 2499737, at *4 (S.D.N.Y. Aug. 7, 2009)
(concluding that plaintiff was exempted from the exhaustion
requirement under Hemphill where he was informed that his complaint
was non-grievable).

   Plaintiff alleges that the response to his initial grievance
was "none." (Compl. 4). Defendants contend that even where a
prisoner files a grievance yet receives no response, he must
nevertheless exhaust. (See Defs.' Mem. 11). Some courts have
reasoned that whether a lack of response renders administrative
remedies unavailable may turn on factual issues, such as whether
the grievance was internally acknowledged and assigned a grievance
number. See, e.g., Randolph, 2007 WL 2660282, at *9 n.10 (citing,
inter alia, Dukes v. SHU C.O. John Doe #1, 2006 WL 1628487, at *2-5
(S.D.N.Y. June 12, 2006)). The allegations of the complaint raise
questions about whether an exception to the exhaustion requirement
applies, which should be determined only on an evidentiary record.

For all of these reasons, it is not clear from the complaint that plaintiff failed to exhaust his administrative remedies or that any such failure would not be excused by an exception to the exhaustion requirement. The viability of defendants' affirmative defense of failure to exhaust administrative remedies therefore cannot be resolved on a motion to dismiss. See, e.g., Randolph, 2007 WL 2660282, at *8 (quoting Sloane v. Mazzuca, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006)) ("the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss").[12]

C.   Personal Involvement of Commissioner Schriro

Defendants contend that the claims against Dora Schriro, Commissioner of DOC, are legally inadequate because plaintiff fails to allege that she was personally involved in the challenged conditions of confinement. A defendant cannot be held liable under § 1983 for an award of damages absent some form of personal involvement in the constitutional violation, regardless of the

---

[12] The Court also declines to convert the motion to dismiss to one for summary judgment where defendants have neither submitted documentary evidence that could establish failure to exhaust nor provided the notice to the pro se plaintiff that is required by Local Rule 12.1.

defendant's position in the governmental hierarchy. See <u>Wright v.</u> <u>Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994).[13]

A supervisory official may be deemed personally involved where the supervisor: (1) directly participated in the infraction; (2) failed to remedy the wrong even after learning of a violation through a report or appeal; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) acted in a grossly negligent manner in supervising subordinates who caused the unlawful condition or event; or (5) demonstrated deliberate indifference to the constitutional rights of the plaintiff by failing to act on information demonstrating that unconstitutional practices were taking place. See <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995).

---

[13] Insofar as plaintiff seeks injunctive relief, "it is sufficient if the plaintiff names an appropriate supervisory defendant in his official capacity." <u>Randolph</u>, 2007 WL 2660282, at *12; <u>see also</u> <u>Voorhees v. Goord</u>, 2006 WL 1888638, at *6 n.1 (S.D.N.Y. Feb. 24, 2006) ("a defendant's personal involvement . . . is not required in a 1983 action seeking injunctive relief"). Any official-capacity claims against defendant Schriro are, in essence, claims against the City of New York, for which plaintiff must comply with <u>Monell v. Dep't. of Soc. Servs. of N.Y.</u>, 436 U.S. 658 (1978).

The Supreme Court recently held in Iqbal, 129 S. Ct. at 1949, that a supervisor's mere knowledge of a subordinate's discriminatory purpose was insufficient to establish that the supervisor had a discriminatory intent. Following Iqbal, courts in this Circuit have generally concluded that "where the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in Colon should still apply." Hodge v. Sidorowicz, 2011 WL 6778524, at *16 (S.D.N.Y. Dec. 20, 2011) (citing Sash v. United States, 674 F. Supp.2d 531 (S.D.N.Y. 2009)).


As to any claims for damages against defendant Schriro in her personal capacity, the Court need not reach the question of which of the Colon factors survives Iqbal. Other than naming defendant Schriro in the caption, plaintiff's complaint is silent regarding her role, if any, in the events at issue in this case. The complaint does not include any allegations that she was notified of the challenged conditions or acted or failed to act in a way that violated plaintiff's rights. Having failed to include any allegations whatsoever that Commissioner Schriro was personally involved in violating his rights, plaintiff fails to state any claim for damages against Commissioner Schriro in her personal capacity. We therefore recommend that defendants' motion be granted

without prejudice to the extent that it seeks to dismiss the § 1983 claims for damages against Commissioner Schriro personally.

D.   Municipal Liability

Defendants move to dismiss the claims against the City of New York and Commissioner Schriro in her official capacity on the ground that plaintiff has not sufficiently alleged that any constitutional violation resulted from a municipal policy or custom. (Defs.' Mem. 15 (citing Monell, 436 U.S. at 693-94)). We agree.

Plaintiff may plead a causal connection between the deprivation of his rights and a policy or practice of the City by alleging: (1) a formal policy officially adopted by the municipality, Monell, 436 U.S. at 690-91; (2) a deliberate unconstitutional act or decision by an authorized decisionmaker, Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.v. Brown, 520 U.S. 397, 404-05 (1997); (3) a widespread practice by subordinate officials that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware, id. at 403-04; or (4) failure to provide adequate training or

22

supervision that rises to the level of deliberate indifference, id. at 407.

In establishing a prison-conditions claim against an individual defendant, whether under either the Eighth Amendment for convicted prisoners or the Fourteenth Amendment for pretrial detainees, "deliberate indifference is a subjective standard requiring proof of actual knowledge of risk by the prison official." Cash v. Cnty. of Erie, 654 F.3d 324, 341 n.8 (2d Cir. 2011) (citing Caiozzo v. Koreman, 581 F.3d 63, 70-71 (2d Cir. 2009)).[14] "By contrast, for purposes of establishing municipal liability, deliberate indifference is an objective standard that is satisfied if the risk is so obvious that the official should have known of it." Id. (citing Vann v. City of N.Y., 72 F.3d 1040, 1049 (2d Cir. 1995)); see also Farmer, 511 U.S. at 841 (noting that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity, as distinct from that of a government official" and reaffirming that a municipality

---

[14] The subjective standard requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official will not be liable under this standard for "a significant risk that he should have perceived but did not." Id. at 838.

is deliberately indifferent if it fails to act where the need for training is obvious). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Vann, 72 F.3d at 1049.

In his complaint, plaintiff alleges that rats and/or gnats are coming out of the shower drains and are "everywhere," "[there] haven't been [any] exterminations for rodents or vermin," and that bird droppings are "on rails and etc." (Compl. 3a). He further alleges that "myself and other people complain several times but nothing gets done until correction officers feel like it." (Id.). He also claims that because of the lack of sanitation "several inmates are getting sick." (Id.). As presently pled, these allegations are insufficient to assert liability on the part of the City because it is unclear to whom complaints were made. See Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) ("the inquiry focuses on whether the action[] . . . is attributable to[] one of the city's authorized policymakers"). Plaintiff has not alleged sufficiently that complaints (e.g., regarding the alleged failure to provide hot water, to clean the

24

facility  or  to  provide  extermination)[15]  were  brought  to  the
attention  of  any  policymaking  official  so  that  liability  can  be
attributed  to  the  City  of  New  York.

Plaintiff  having  failed  to  sufficiently  allege  liability  on
the  part  of  the  City  of  New  York  or  Commissioner  Schriro  in  her
official  capacity,  his  Monell  claim  must  be  dismissed  without
prejudice  for  failure  to  state  a  claim  on  which  relief  can  be
granted.

E.  The Nature of the Dismissal

Because  plaintiff  is  proceeding  pro  se,  we  recommend  that  he
be  granted  leave  to  amend  within  thirty  days  after  dismissal  to
cure  the  deficiencies  of  the  complaint  if  he  is  able  to  allege  (1)
the  personal  responsibility  of  Commissioner  Schriro  or  (2)  that

---

[15] Defendants have not moved to dismiss on the ground that
the alleged conditions are insufficiently serious to state a
claim for deliberate indifference to plaintiff's constitutional
rights. See Baskerville v. Blot, 224 F. Supp.2d 723, 733-34
(S.D.N.Y. 2002).

25

policymaking   officials   were   made   aware   of   the   challenged

conditions, or (3) both.[16]

CONCLUSION

We recommend that the Court deny defendants' motion to dismiss

based on the IFP Application because defendants fail to demonstrate

that plaintiff misled the Court in bad faith or that his allegation

of  poverty  is  untrue.  We  also  recommend  that  the  Court  deny

defendants' motion to dismiss for failure to exhaust administrative

remedies  because  it  is  not  clear  from  the  face  of  the  complaint

that  plaintiff  failed  to  exhaust  or  that  no  exception  to  the

exhaustion requirement applies. We recommend that the Court grant

defendants'  motion  to  dismiss  the  claims  against  Commissioner

Schriro in her personal capacity for lack of personal involvement.

We  also  recommend  that  the  Court  grant  defendants'  motion  to

dismiss  the  claims  against  Commissioner  Schriro  in  her  official

capacity  and  the  City  of  New  York  for  failing  to  allege

sufficiently  that  a  policy  or  practice  of  the  City  of  New  York

---

[16] "[A] municipality may be found liable under § 1983 even in
the absence of individual liability," if "'the combined acts or
omissions of several employees acting under a governmental policy
or custom may violate' those rights." Barrett v. Orange Cnty.
Human Rights Comm'n, 194 F.3d 341, 350 (2d Cir. 1999) (quoting
Garcia v. Salt Lake Cnty., 768 F.2d 303, 310 (10th Cir. 1985)).

caused the deprivation of plaintiff's rights. Because plaintiff is proceeding pro se and may be able to cure the deficiencies of the complaint, we recommend that the court grant leave to amend within thirty days after dismissal.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable George B. Daniels, Room 1310, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985).


DATED: New York, New York
       March 7, 2012

                              RESPECTFULLY SUBMITTED,


                              _____
                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE



27

Copies of the foregoing Report and Recommendation have been sent this date to:

Mr. Donald White
B&C# 441-11-00242
G.R.V.C.
09-09 Hazen Street
East Elmhurst, NY 11370


Emily Sweet, Esq., Of Counsel
Corporation Counsel of the
City of New York
100 Church Street
New York, NY 10007
Fax: (212) 788-8877